IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KIRK REDMAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 6818 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| GREG ALLEN and | ) | |
| GRANT GRASTORF, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Kirk Redman brought this action to enjoin defendants Greg Allen and Grant Grastorf from submitting their claims against him to arbitration. The case is before the Court on the parties' Federal Rule of Civil Procedure ("Rule") 56 cross-motions for summary judgment. For the reasons set forth below, Redman's motion is granted and defendants' motion is denied.

### Facts

Core Sales, Inc. ("Core") is in the business of selling semiconductors. (Redman's Mem. Supp. Combined Cross Mot. Summ J. & Resp. Defs.' Mot. Summ. J., Ex. 3, Redman Aff. ¶ 2.) From the time of its incorporation on March 2, 1998 through June 1, 2005, Core was owned by plaintiff Redman and Grover Allen. (Defs.' LR 56.1(a) Stmt. ¶ 2.) On June 1, 2005, Redman purchased Grover Allen's shares and became the sole owner of Core. (*Id.*)

On October 17, 2003, defendants Greg Allen, Grover's brother, and Grastorf became Core sales representatives. (Compl. Exs. A & B.) Defendants signed identical employment agreements with Core. (*Id.*) Among other things, the agreements contain a restrictive covenant that bars defendants

from working for any of Core's principals for two years after their employment with Core ends. (Compl. Ex. A at 5; *id.*, Ex. B at 5.) The agreements also contain an arbitration provision that states:

> The parties agree to negotiate in good faith in an attempt to resolve any disputes or controversies arising out of or related to or affecting the subject matter of this Agreement. Any dispute arising under or pursuant to or affecting the subject matter of this Agreement which Core and Employee are unable to resolve by themselves shall be submitted for binding arbitration to Judicial Arbitration and Mediation Services .
> . . .

(Compl. Ex. A at 6; *id.*, Ex. B at 6.)

On October 20, 2004, defendants stopped working for Core. (*Id.*, Ex. C, Arbitration Demand ¶ 6.)

On September 21, 2005, Core filed a demand for arbitration to enforce the restrictive covenant against defendants. (*Id.* ¶¶ 3-7.) On November 17, 2005, defendants sought leave to add Redman, individually, as a cross-respondent in the arbitration. (*Id.*, Ex. E, Mot. Leave Am. Countercl. & Add Cross-Def. ¶ 3.) Redman objected and filed this suit seeking a declaration that he does not have to arbitrate and an injunction barring defendants from pursing their claims against him in the arbitration proceeding.

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*,

209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

As a general rule, parties who have not signed an arbitration agreement are not bound by it. *See Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005). There are exceptions to this rule, however, and defendants say this case falls into several of them.[1] One such exception is the doctrine of equitable estoppel. Under that doctrine, a party who claims the benefit of a contract is estopped from asserting that he is not bound by the arbitration clause it contains. *Id.* at 688; *see Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("'In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage.'" (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966) (parentheses in original))). "The touchstone of this form of estoppel . . . is whether the non-signatory has brought suit against the signatory premised upon the agreement that contains the arbitration clause at issue . . . ." *Gersten v. Intrinsic Tech., LLP*, 442 F. Supp. 2d 573, 579 (N.D. Ill. 2006). Redman has not sued defendants. Nor is he seeking, in his individual capacity, to enforce the employment agreements against them. Rather, he is doing so solely in his capacity as an officer of Core. Because Redman has taken no action in his individual capacity against defendants, the doctrine of equitable estoppel does not apply.

Defendants also argue that Redman is bound to the arbitration provision by common law agency principles. Though courts have invoked those principles as a basis for applying arbitration

---

[1] Redman says the Court should not address the exceptions because they are affirmative defenses that defendants waived by not asserting them in their answer. *See* Fed. R. Civ. P. 8(c). Defendants say they are not affirmative defenses and, even if they are, their failure to assert them should be excused. Ultimately, however, it does not matter whether the exceptions constitute affirmative defenses because, as discussed below, none of them applies to this case.

3

provisions to non-signatories, they have done so only when " a signatory has brought claims against nonsignatory agents and the agents then seek to invoke the arbitration clause against the *signatory*." *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1054 (D. Or. 2004); *see Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1005 (N.D. Ill. 2001) (holding that non-signatories could compel signatory to arbitrate under agency principles); *Messing v. Rosenkrantz*, 872 F. Supp. 539, 541 (N.D. Ill. 1995) (same).

However "[t]he situation is materially different when . . . a signatory seeks to invoke an arbitration clause against a *nonsignatory*[,]" because under general agency principles "'a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.'" *Legacy Wireless Servs.*, 314 F. Supp. 2d at 1054 (quoting Restatement (Second) of Agency § 320); *see Proshred Holdings Ltd. v. Conestoga Document & Prod. Destruction, Inc.*, No. 02 C 1551, 2002 WL 1067328, at *5 (N.D. Ill. May 28, 2002) ("The Court, after exhaustive research, has been unable to locate any controlling authority supporting the position that . . . a signatory may bind a non-signatory agent to an arbitration agreement entered into by its principal."). Defendants have not cited, and the Court has not found, a single case from this circuit that supports their claim that they can hold Redman to the arbitration agreement they entered into with Core. Thus, agency principles do not further defendants' case.

Alternatively, defendants argue that Redman can be compelled to arbitrate this dispute because Core is his alter ego, not an independent corporate entity. The Court can pierce a corporate veil and hold the corporation's alter ego liable for corporate obligations only if two conditions are met: "[(1)] there is such unity of interest and ownership that the separateness of the individual and corporation has ceased to exist, and [(2)] the facts are such that an adherence to the fiction of separate existence of the

4

corporation would sanction a fraud or promote injustice . . . ." *People ex rel. Scott v. Pintozzi*, 277 N.E.2d 844, 851 (Ill. 1971) (internal quotation omitted). "Courts are reluctant to pierce the corporate veil," however, and will do so only if they party requesting it makes "a *substantial* showing that the corporation is really a dummy or sham for another dominating entity." *Jacobson v. Buffalo Rock Shooters Supply Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996).

To determine whether the degree of unity necessary to satisfy the first condition exists, courts consider a number of factors, including whether the corporation: is inadequately capitalized or insolvent; issued stock and paid dividends; observed corporate formalities and maintained corporate records; had functioning officers or directors other than the alleged alter ego; and commingled funds with or had its assets diverted to the alter ego. *Id.*

Defendants contend that they have established the requisite degree of unity between Core and Redman through the affidavit of Greg Allen. In that affidavit, Greg asserts that Core failed to observe various corporate formalities from its incorporation in 1998 through 2005, when Redman became the company's sole owner. (*See* Defs.' Mot. Summ. J., Ex. 5, Greg Allen Aff. ¶¶ 1-3.) But Greg does not say how he knows that Core did not adhere to the corporate formalities during that period. Moreover, because he was not an officer or director of the company and was only employed by it from October 17, 2003 to October 20, 2004, we cannot infer that his information is based on personal knowledge. Consequently, Greg is not competent to testify about this issue.

Defendants apparently recognized this problem because they also submitted an affidavit of Grover Allen that substantiates the information offered by Greg. Grover, who was an officer of Core from its inception until 2005, says that Core did not draft bylaws, hold shareholder or annual meetings, elect directors or issue stock at any time before June 13, 2005. (*See* Grover Allen Aff. ¶ 1.) But those

are only a few of the factors to be considered in the first step of the veil-piercing analysis. The others include whether Core is inadequately capitalized or insolvent, had any functioning officers other than Redman, and commingled funds with or had its assets diverted to Redman. Grover's affidavit does not address any of these factors.

The record is not, however, silent on these issues. Redman submitted an affidavit attesting that: Grover was an active manager of Core from 1998 through October 2004; currently there are three people other than Redman who are officers, directors and active managers of Core; Core has separate bank accounts and does not commingle funds with Redman; and Core filed its domestic corporation annual reports. (Redman's Mem. Supp. Combined Cross-Mot. Summ. J. & Resp. Defs.' Mot. Summ. J., Redman Aff. ¶¶ 5-10 & Ex. 6.)

In short, viewed favorably to defendants, the record shows that Core did not adhere to certain corporate formalities. It does not, however, show that Core is a just a facade for Redman.

Moreover, even if it did, defendants could only prevail if there were evidence of the second veil-piercing condition, that adhering to the corporate fiction would "sanction a fraud or promote injustice." *People ex rel. Scott*, 277 N.E.2d at 851 (internal quotation omitted). The injustice in adhering to the fiction in this case, defendants say, is that they will have to pursue their claims against Core and Redman in two different forums. To the extent that sort of inconvenience can even be characterized as an injustice, it is not the kind of injustice necessary to pierce Core's corporate veil. *Compare id.* at 851-52 (upholding trial court's decision to pierce the veil of a corporation that was set up by defendants "as a device [to] commit[] fraud by collecting taxes from purchasers but not remitting the same to the State"), *with Jacobson*, 664 N.E.2d at 332 (holding that corporation's "failure to obtain

workers' compensation insurance . . . . to cover the death of its employees" was not a sufficient injustice to warrant piercing the corporate veil).

Defendants' fare no better with their last argument, that Redman should be compelled to arbitrate because the law favors arbitration. As our court of appeals has said, "the federal policy favoring arbitration applies to issues concerning the *scope* of an arbitration agreement entered into consensually by contracting parties; it does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitrate in the first place." *Grundstad v. Ritt*, 106 F.3d 201, 205 n.5 (7th Cir. 1997). Laudable though it may be, the policy favoring arbitration does not support defendants quest to force Redman to arbitrate.

## Conclusion

For the foregoing reasons, the Court grants Redman's motion for summary judgment [doc. no. 20] and denies defendants' motion for summary judgment [doc. no. 19]. The Court hereby enters a judgment: (1) declaring that Kirk Redman, in his individual capacity, has no obligation to participate in the pending arbitration proceeding between defendants and Core and is not bound by any of award or determinations that result from it; (2) permanently enjoining defendants from prosecuting claims against Redman, in his individual capacity, in that proceeding. This case is terminated.

**SO ORDERED.**  ENTERED: 11/3/06

HON. RONALD A. GUZMAN
United States District Judge